**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MARYLAND**
**Greenbelt Division**

In re:  **Mahmoud Musa Abulhawa,**                      Case No.:  **21-14649-TJC**
                                                        **Chapter 13**

                  **Debtor.**

### COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT

Kapitus Servicing, Inc. f/k/a Colonial Funding Network, Inc. as servicing agent for Strategic Funding Source, Inc. d/b/a Kapitus ("**Kapitus**" or "**Plaintiff**"), by counsel, seeks to determine the debt owed it by the Debtor as non-dischargeable under 11 U.S.C. § 523(a)(2), (a)(4) and (a)(6).

### Jurisdiction and Venue

1.      This Court has jurisdiction over the instant action pursuant to 28 U.S.C. § 1334(a) and 28 U.S.C. § 157(b)(2)(I) as a core proceeding arising in a case under Title 11.[1]

2.      Venue over the instant action properly lies in this Court pursuant to 28 U.S.C. § 1409(a) because this Complaint arises in the Debtor's Chapter 13 bankruptcy case.

3.      Kapitus is a Virginia corporation with its principal place of business in Arlington, Virginia.

---

[1] Notwithstanding any of the allegations and claims herein, the institution of this Adversary Proceeding, the filing of this complaint and any other appearance in this Adversary Proceeding and in the above-referenced bankruptcy case (the "Bankruptcy Case"), including the submission of motions, opposition papers, and entry of orders, is without waiver, and express reservation, of any and all of Kapitus' rights, defense and remedies available at law and in equity, including, without limitation, under the Agreement (as defined below), Uniform Commercial Code, any other applicable federal or state law and/or commercial code, and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*.  If and when Kapitus files a proof of claim in the Bankruptcy Case (the "Proof of Claim"), Kapitus expressly incorporates any reservation of rights that it shall incorporate in the Proof of Claim.

Paige Levy Smith, MD Fed. Bar No. 19912
SANDS ANDERSON PC
1497 Chain Bridge Road, Suite 300
McLean, Virginia 22101-5728
Tel. 703.893.3600
 *Counsel for Kapitus Servicing, Inc. f/k/a Colonial Funding Network, Inc.,*
*as servicing agent for Strategic Funding Source, Inc., d/b/a Kapitus*

4.      Mahmoud Musa Abulhawa (the "**Debtor**") is a natural person and is a resident of the state of Maryland.

5.      Delicious Gourmet, LLC ("**Delicious Gourmet**") is a Maryland limited liability company.

6.      Upon information and belief, at all times relevant hereto, the Debtor was and is the sole owner, member and manager of Delicious Gourmet, controlled and made all decisions and statements to Plaintiff relevant to the issues herein.

**SPECIFIC FACTUAL ALLEGATIONS**

**A. The Parties' Agreement and Pre-Bankruptcy Dealings**

7.      On August 14, 2018 Plaintiff, Delicious Gourmet and Debtor as guarantor, entered into the *Loan Agreement* (the "**Agreement**"), *Security Agreement* (the "**Security Agreement**") and *Guaranty* (the "**Guaranty**"). As further detailed in the Agreement, Security Agreement and Guaranty, the Debtor in exchange for a loan in the principal amount of $30,600.00 from Kapitus, granted a security interest in Delicious Gourmet's assets, including accounts receivables, and promised to pay Kapitus the repayment amount of $41,922.00 (the "**Repayment Amount**"), by authorizing Plaintiff to debit specified remittances in the amount of $807.00 from Debtor's depositing bank account, SunTrust #0903, (the "**Account**") on a weekly basis. True and correct copies of the Agreement and Guaranty are attached hereto jointly, as **Exhibit A**.

8.      Kapitus obtained a security interest in the Delicious Gourmet assets, including accounts receivable of Delicious Gourmet as reflected in the UCC-1 financing statement filed by Kapitus with the State of Maryland and attached as **Exhibit B**.

9.      On August 16, 2018, Kapitus fulfilled its obligations under the Agreement by advancing $29,815.00 to Debtor's depositing Account, after deduction of fees and costs.

10.    However, by September 18, 2018, Delicious Gourmet and Debtor defaulted on their obligations under the Agreement and Guaranty, closing the Account and ceasing all payments thereafter.

11.    Prior to the default, on August 23, 2018, the Debtor called Kapitus directly and inquired whether there was a penalty to pay his balance early. Kapitus representative explained that there is no penalty, but that he may request a payoff letter and pay the remaining balance. He indicated that if he repays the loan off next Friday, he should only pay $30,000, instead of the Repayment Amount. After it was explained that there is a set payback amount regardless of the repayment timing, the Debtor indicated that he will "speak to his people and call [us] back."

12.    Unbeknownst to Kapitus at the time, the Debtor had issued a cashier's check to himself in the amount of $30,000.00 on August 17, 2018 (the day after the funding of the Account) and had sent the money to a third party, Acceleration Capital Group. The records obtained by Kapitus in this bankruptcy case, revealed that the Debtor evidently lost that check in the mail, and re-issued it and then sent two checks, one in the amount of $30,000 and the other in the amount of $5,000, to "Acceleration Cap Group" on September 4, 2018.

13.    In the interim, on September 13, 2018, the Debtor called Strategic Funding or Colonial (defined here as "Kapitus") again asking if three weekly payments had been taken from the Account, when Kapitus verified that the weekly repayments had been taken and one was forthcoming the next week. The Debtor asked for his sales representative's contact information. He also advised Kapitus that he had been robbed and explained that his phone and wallet had been stolen. However, when the Debtor was asked if he had ever spoken with Kapitus or if he had been robbed in September of 2018, during his 2004 Examination held on October 8, 2021, he stated that

he had not spoken with Strategic or Colonial and that he was never robbed of his phone or credit cards.

14.    On September 19, 2018, when the weekly payment was first returned for insufficient funds, Kapitus reached out to the Debtor.  At that time, the Debtor stated in telephone recordings "the people who got me the loan, okay, went and did a fraud on the $30,000 went into the account and stole the money. And the reason you cannot get the money from the account because its zero money. So right now, I hired a lawyers and the people's name is Jimmy and he promised me to return the money back. I just hire a lawyers from New York for the problem. For your respect, guys, I got the money, that's fine, but right now I have no money. I have two choices, my lawyer told me, file bankruptcy or wait until these people return the money. . .  Yes, these people got the money from my account. He stole it right away. They stole it from the bank. . . ." When asked for proof he affirms that he has everything and will send it shortly. He indicates that he spoke with Dimitria and now he can no longer reach them. He also indicated that Jimmy owned the business that got him the loan with Colonial. He later states, according to the recordings: "I have no problem to give you the money, guys. I have no problem at all with the funds, okay, I only have in my name $7,000. If you want to wait, wait for my lawyer, or settle on $7,000, whatever you want to do, guys, respect for you guys. . . . I didn't tell my wife, if I told my wife she would kill me . . . and these people they promised me a lot of things and then they got my routing number and everything, they got control cashier's check. I have the cashier's check with me . .  . I gave it to my lawyer. . . I am not lying to you guys, it's the truth . . . I got everything from them. . . . They took $30,000 and $5,000 and I have check where they took money from . . . I know how much you funded me . . . I am not going to lie . . . I have no problem to give you $7,000 . . . for respect for

4

you. . . I do not do business like this. . . . I am out of money, you are out of money and that's not fair."

15.     On September 24, 2018, when the Debtor called Kapitus to provide his police case information against "Jimmy" from "Acceleration Capital Group", stated, "the company that went and got me the money from you guys, went and stole the money right away."

16.     Although the Debtor was asked to provide information about this fraud, as of October 4, 2018, nothing appears to have been received by Kapitus.

17.     In reality, however, the Debtor was never robbed and the money from the Account were not taken out by anyone but the Debtor. As it was revealed by the records produced by the Debtor in this Bankruptcy Case, and the Debtor's testimony during his 2004 Examination, the Debtor himself withdrew two checks, one for $30,000 and one for $5,000 and knowingly paid them over to Acceleration Capital Group on his own.

18.     The Debtor clearly knew he was dealing with a separate and unaffiliated entity when he called Kapitus, but despite this clear understanding, he now gives a contrary testimony.

19.     The Debtor's bank statements also reflect that he intentionally closed the Account on September 13, 2018 and transferred approximately $25,000 to two new SunTrust accounts, thereby depleting the Account, defrauding Kapitus and preventing it from receiving weekly payments.

**B. The Virginia State Court Action**

20.     On November 27, 2018, Kapitus instituted litigation in the Circuit Court of the County of Arlington, Commonwealth of Virginia, (the "**Litigation**") against Delicious Gourmet and the Debtor (jointly, "**Defendants**"). As detailed in the Complaint, Plaintiff's action sought to recover the total amount of $49,623.75, which included all costs, contractual fees, and attorney's

fees, plus interest at the legal rate authorized by law, for Defendants' failure to comply with their contractual obligations to Plaintiff with respect to the Agreement and the Guaranty.

21.    The Defendants never filed a responsive pleading in the Litigation and a default judgment hearing was scheduled for July 12, 2019.  However, on June 21, 2019, the Debtor filed a Chapter 13 bankruptcy case (Case No. 19-18472) (the "**First Case**").  On September 13, 2019, the state court entered a Partial Final Judgment against Delicious Gourmet.

**C. The Bankruptcy Cases**

22.    During the pendency of the First Case, the Debtor filed four (4) chapter 13 plans. Kapitus and the Chapter 13 Trustee objected to each of those plans, and they were denied. The Chapter 13 proceeding stayed the Virginia state court proceedings and precluded the Judge from entering an order granting relief to Kapitus against the Debtor, individually. After denial of confirmation of the fourth plan, the First Case was dismissed on July 7, 2020, for the Debtor's failure to file an amended plan pursuant to the Court's order.

23.    Shortly thereafter, Kapitus, again scheduled a motion for default judgment for September 4, 2020, and the Debtor again filed a bankruptcy case on August 31, 2020 (the "**Second Case**"). In the Second Case, the Debtor again failed to comply with his bankruptcy obligations, failed to produce documents to Kapitus and failed to propose a confirmable plan, and therefore the Second Case was dismissed.

24.    This is the Debtor's third bankruptcy case filed on July 15, 2021, after the Second Case was dismissed on June 1, 2021.

25.    As of the petition date, the Debtor, as guarantor of the Agreement, owes Kapitus the amount of at least $58,807.79 (the "**Claim**").

26.     The Debtor has filed three (3) bankruptcies, without a successful attempt at reorganization. The First, Second and now this case were filed within just a few weeks of Kapitus' motions for default judgment and shortly before the hearings on said motions to stay Kapitus from obtaining judgment against the Debtor.

27.     On September 29, 2021, the Debtor filed his amended objection to the Claim, asserting that he was defrauded.  However, any fraud was of the Debtor's own doing.

28.     As the Debtor states, Acceleration Capital Group, were "his people", who helped him obtain funding with Kapitus. Acceleration Capital Group, also known as JTT Global Holdings, were never employees or agents of Kapitus.

29.     In a sworn statement to the Suffolk District Attorney, attached hereto as **<u>Exhibit C</u>**, the Debtor explained at the time, that in June of 2018, he was contacted by "Demetria" from Acceleration Capital Group. Then, Demetria also told him the terms of the loan was that the interest needed to be paid up front. In this case the interest fee would be $15,000.00. "I told Demetria that I did not have $15,000.00. Demetria told me don't worry you can fund the fee with another loan from another lender. Then pay the first loan back after you receive the second loan. I agreed to this, and on or about August 14th, 2018 I received loan documents from Strategic Funding Source / Colonial Funding. I completed the paperwork and sent it back to Strategic Funding Source / Colonial Funding. Shortly after this, $30,000.00 was wired into my business account. I thought this was odd since I only needed $15,000.00. I called Demetria about this and Demetria told me that if I sent them the $30,000.00 plus another $5,000.00 as the interest up front I would be approved for a loan of $1,000,000.00. Since I needed as much working capital for my business as possible, I agreed."

30.     The Debtor failed to comply with any of the requirements of the Agreement or Guaranty and based on his sworn statement to the police, had no intention of doing so when he entered into the Agreement or Guaranty and related loan agreements, which he admits he signed.

31.     The Debtor misrepresented his intentions and used the monies loaned to him by Kapitus in a scheme he willingly participated in to obtain another loan for $400,000 or $1 million Dollars offered to him by a representative from Acceleration Capital Group or JTT Holdings.

32.     The Debtor's 2004 Examination testimony confirmed that he understood and allowed Plaintiff to collect its Repayment Amount, through the Account, which was designated by the parties in the Agreement and fully accessible to Plaintiff.  *See* Exhibit A, Agreement, pp. 8, 9 §§ 1.1, 2.6.

33.     To avoid disruption, the Agreement prohibited changes to the Account or the designation of the deposit account except with Plaintiff's express written consent.  See *id*. at p. 8 § 1.1.

34.     The Agreement further states that:

> The Repayment Amount shall be paid to LENDER by Borrower's using and irrevocably authorizing only one depositing bank account acceptable to LENDER (the "Account") to remit the Payment until such time as LENDER receives payment in full of the Repayment Amount plus any other amounts owed to LENDER under this Agreement. . . . Borrower understands that it is responsible for ensuring that the Payment to be debited by LENDER remains in the Account and will be held responsible for any fees incurred by LENDER resulting from a rejected ACH attempt or an event of default (see, Loan Summary).

**Exhibit A**, *Agreement*, pg. 6.

35.     In addition to the above terms, by entering the Agreement Debtor represented, warranted, and covenanted the following:

> **II.     REPRESENTATIONS, WARRANTIES AND COVENANTS.**  Merchant represents, warrants and covenants that as of this date and during the term of the Agreement:

**2.6** **BORROWER DEPOSITING ACCOUNT AGREEMENT AND ARRANGEMENTS.** Without LENDER's prior written consent, Borrower will not (i) change the Account through which Borrower's receivables are settled; (ii) set up multiple bank accounts into which any of the Borrower's receivables are deposited or otherwise transferred, (iii) block or stop payment on LENDER debits initiated under this Agreement, (iv) permit any event to occur that could cause diversion of any of Borrower's receivables to another Account; (v) take any other action that could have any adverse effect upon Borrower's obligations under this Agreement. Borrower will batch out receipts with all payment processors on a daily basis. Any of the foregoing changes, actions or inactions shall be a material breach of this Agreement.

**2.9** **OTHER FINANCING.** Borrower shall *not* enter into any arrangement, agreement or commitment, whether in the form of a purchase (such as a merchant cash advance or factoring arrangement) of, a loan against, or the sale or purchase of credits against, any receipts, cash deposits or future card or mobile payment sales with any party other than LENDER without LENDER'S written permission.

*Id*. at pg. 9-10

36.     In executing the Agreement and Guaranty, the Debtor agreed that all information provided in forms and recorded interviews was "true, accurate, and complete in all respects", and the Agreement further emphasized that "**ANY MISREPRESENTATION MADE BY MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL FRAUDULENT INDUCEMENT TO OBTAIN FUNDING**." Agreement at p. 5 (emphasis in original).

37.     Debtor further executed a personal guaranty of Delicious Gourmet's full performance of all terms and obligations under the Agreement. *See* Exhibit A, Guaranty, as attached to p. 16 of the Agreement.

38.     In reliance on the representations made by Debtor in the Agreement and during the Pre-Funding Call with Kapitus, Plaintiff agreed to loan the amount referenced above.

39.     Debtor intended to take the loan from Kapitus so that he could "gamble" it on an even bigger loan. Almost immediately after its execution by the parties, Debtor materially violated the terms of the Agreement.  By no later than August 17, 2018, the Debtor took out the $30,000 funded through Kapitus and sent them to a third party, to obtain an incredibly large loan in breach of the terms of the Agreement. The Debtor materially breached the Agreement a mere day after its execution.

40.     On September 13, 2018, the Debtor as the owner of Delicious Gourmet, closed the Account and opened two new SunTrust accounts and deposited funds upon which Kapitus had a lien, into the new accounts, thereby preventing Plaintiff from collecting the weekly debit amounts.

41.     In addition to the principal and interest, which remain unpaid, Debtor also incurred $198.00 in returned ACH debit fees under the Agreement due to Account being frozen or closed. *See* **Exhibit D** – *Statement Activity*.  The Agreement further entitles Plaintiff to $2,500 in "Default" fees for "blocking" the Account from debit ACH because the Debtor has altered or stopped depositing Receivables into the Account.  *Id.*

42.     The combined sum of outstanding loan amount due to Plaintiff, the ACH debit fees, the default account fees, interest and attorney's fees total at least $58,807.79 plus additional attorneys' fees, costs and interest at the statutory rate of 6% per annum from the date of default that continue to accrue.

43.     Debtor has failed to fulfill his and Delicious Gourmet's obligations, either personally or as guarantor, to cure the debt owed to Plaintiff, and has defaulted under the Agreement.  Accordingly, Debtor is liable to Plaintiff in the amount of at least $58,807.79 under the Agreement plus additional attorneys' fees, costs and interest at the statutory rate of 6% per annum from the date of the default that continue to accrue.

44.     Upon information and belief, at the time of the Agreement and its negotiation, Debtor intended to use the loan amount, not for working capital, but only to obtain funding from a third-party for a $400,000 or $1,000,000 loan.

45.     Debtor affirmatively misrepresented his intention to only obtain a loan for business purposes and not to enter into additional financing without Plaintiff's written permission.

> **1.15 LOAN FOR SPECIFIC PURPOSES ONLY.** The proceeds of the requested Loan may solely be used only for the specific purposes as set forth in a Use of Proceeds Certification Addendum, and not for any other purposes. Under no circumstances will the Loan be used for personal, family or household purposes. Borrower and Guarantor understand that Borrower's agreement not to use the Loan proceeds for personal, family or household purposes means that certain important duties imposed upon entities making loans for consumer/personal proposes, and certain important rights conferred upon consumers, pursuant to federal or state law will not apply to the Loan or the Agreement. Borrower and Guarantor agree that a breach by Borrower of the provisions of this section will not affect Lender's right to (i) enforce Borrower's and Guarantor's promise to pay for all amounts owed under this Agreement, regardless of the purpose for which the Loan is in fact obtained or (ii) use any remedy legally available to Lender, even if that remedy would not have been available had the Loan been made for consumer purposes.
>
> **2.9 OTHER FINANCING**. Borrower shall not enter into any arrangement, agreement or commitment, whether in the form of a purchase (such as a merchant cash advance or factoring arrangement) of, a loan against, or the sale or purchase of credits against, any receipts, cash deposits or future card or mobile payment sales with any party other than LENDER without LENDER'S written permission.

**Exhibit A**, *Agreement*, pg. 9-10.

46.     Upon information and belief, Debtor never had any intention to honor the Agreement or Guaranty.  Instead, the Debtor intended to use the Kapitus funding to obtain other financing in an incredibly risky scheme, which contravenes all rational business judgment, and then immediately closed the Account and opened two new bank accounts to divert the assets of Delicious Gourmet away from Plaintiff.

47. Further, the Debtor's Schedule E/F filed as part of Debtor's bankruptcy petition on July 15, 2021, indicate that he has credit card balances with Capital One, Chase and Macy's. And during his 2004 Examination, he testified that he was using the business accounts to pay off personal expenses, such as Capital One, Chase and Macy's, and to gamble at several casinos.

48. The Debtor made the misrepresentations with the intention and purpose of deceiving Kapitus so that Kapitus would extend the loan that would enable him to pay off personal obligations with his business account. The Debtor further certified that the loan proceeds would in the ordinary course of business, which he had no intention of doing.

### USE OF PROCEEDS CERTIFICATION

*This Use of Proceeds Certification* is *part of (and incorporated by reference into) the Loan Agreement. All parties should retain a copy of this document for their records.*

<u>Mahmoud Musa Abulhawa.</u> Borrower(s) and Mahmoud Musa Abulhawa Guarantor(s) hereby certify the following to the Lender:
1) The entirety of the Loan will be used in the ordinary course of business.
2) The entirety of the Loan will be used exclusively for a Business Purpose and no other. A Business Purpose as applied to use of proceeds obtained under this Loan Agreement, refers solely to the purchase and acquisition of specific products or services used for the following purposes only: working capital, business insurance (but not self-insurance programs), franchise fees, employee training, the purchase of equipment, inventory, business supplies and raw materials, the construction, renovation or improvement of facilities (but not the purchase of real estate). Business Purpose does not include payment for, or purchase of, any items, goods, materials or services for personal, individual or household use.

**<u>Exhibit A</u>**, *Agreement*, pg. 15.

49. Kapitus would not have extended the loan had the Debtor's intentions been revealed. Debtor's conduct and statements demonstrate that Debtor obtained money from Plaintiff by false pretenses, false statements, or actual fraud. Accordingly, the debt owed by Debtor to Plaintiff is non-dischargeable, and Plaintiff is entitled to an award of a non-dischargeable judgment and damages in the amount of at least $58,807.79, plus additional attorneys' fees, costs and interest

at the statutory rate of 6% per annum from the date of the default that continue to accrue, and such other relief as the Court deems just and proper.

## COUNT I
### (Non-dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2)(A))

50.     Plaintiff realleges paragraphs 1 through 49 and incorporates the same as though set forth herein.

51.     Plaintiff believes and alleges that the Debtor entered into the Agreement with the specific intent to never repay the full loan amount owed to Plaintiff.  In addition, Plaintiff believes and alleges that the Debtor made false statements to Plaintiff with the intent to induce Plaintiff to extend funds.

a.     In the Agreement, the Debtor represented to Plaintiff that Debtor intended to use the proceeds of the Agreement for business purposes.  Specifically, the Debtor represented and promised to Plaintiff to use the proceeds exclusively for a "Business Purpose and no other. A Business Purpose as applied to use of proceeds obtained under this Loan Agreement, refers solely to the purchase and acquisition of specific products or services used for the following purposes only: working capital, business insurance (but not self-insurance programs), franchise fees, employee training, the purchase of equipment, inventory, business supplies and raw materials, the construction, renovation or improvement of facilities (but not the purchase of real estate). Business Purpose does not include payment for, or purchase of, any items, goods, materials or services for personal, individual or household use."  *See* **Exhibit A**, Agreement, p. 15.  Plaintiff justifiably relied on these representations to extend the financing and execute the Agreement and Guaranty.

b.     To allow Plaintiff to collect its weekly payments, the Agreement required Debtor to use only the Account - a single, specified depositing account to deposit all assets and

receivables collected by Delicious Gourmet, which was designated by the parties in the Agreement and fully accessible to Plaintiff. *See* **Exhibit A**, Agreement, pp. 8, 9 §§ 1.1, 2.6. Plaintiff justifiably relied on these representations to extend the financing and execute the Agreement and Guaranty.

        c.        The Debtor and Delicious Gourmet also made represented and warranted to Plaintiff in the Agreement, and Plaintiff relied upon to lend money to Delicious Gourmet:

> **II.  REPRESENTATIONS, WARRANTIES AND COVENANTS.**  Merchant represents, warrants and covenants that as of this date and during the term of the Agreement:
>
> **2.6 <u>BORROWER DEPOSITING ACCOUNT AGREEMENT AND ARRANGEMENTS.</u>** Without LENDER's prior written consent, Borrower will not (i) change the Account through which Borrower's receivables are settled; (ii) set up multiple bank accounts into which any of the Borrower's receivables are deposited or otherwise transferred, (iii) block or stop payment on LENDER debits initiated under this Agreement, (iv) permit any event to occur that could cause diversion of any of Borrower's receivables to another Account; (v) take any other action that could have any adverse effect upon Borrower's obligations under this Agreement. Borrower will batch out receipts with all payment processors on a daily basis. Any of the foregoing changes, actions or inactions shall be a material breach of this Agreement.
>
> **2.9 <u>OTHER FINANCING.</u>** Borrower shall *not* enter into any arrangement, agreement or commitment, whether in the form of a purchase (such as a merchant cash advance or factoring arrangement) of, a loan against, or the sale or purchase of credits against, any receipts, cash deposits or future card or mobile payment sales with any party other than LENDER without LENDER'S written permission.

*Id.* at p. 10.  Plaintiff justifiably relied on these representations to extend the financing and execute the Agreement.

        52.     Plaintiff was to collect $807.00, respectively, per week from Delicious Gourmet via ACH debits.  Plaintiff transferred the proceeds from the Agreement into this Account.  Pursuant to the Agreement, Delicious Gourmet was to maintain the Account with sufficient funds to cover

payments to Plaintiff.  *Id.*, at p. 6.  Plaintiff relied on these representations to extend the financing and execute the Agreement and Guaranty.

53.     However, upon information and belief, the Debtor never had any intention to honor the Agreement or the Security Agreement and Guaranty, or any intent to use the proceeds from the Agreement for business purposes.

54.     On or about August 16, 2018, Debtor received $29,815.00 from Plaintiff based on Plaintiff's reliance on Debtor's false and fraudulent statements and acts.

55.     Debtor immediately defaulted on its payment obligations under the Agreement. Plaintiff debited a total of $2,421 from the Agreement via ACH payments, only 3 payments.

56.     The Debtor's statements and acts described above constitute conduct to obtain money by false pretenses, false statements, or actual fraud.

57.     The Debtor's debt to Plaintiff is a debt for money, property, services, or an extension, renewal, or refinancing of credit, obtained by false pretenses, a false representation, or actual fraud, and is non-dischargeable.  Plaintiff is further entitled to an award of damages in the amount of $58,807.79, plus additional attorneys' fees, costs and interest at the statutory rate of 6% per annum from the date of the default that continue to accrue, and such other relief as the Court deems just and proper.

## COUNT II
### (Non-dischargeability of Debtor Pursuant to 11 U.S.C. § 523(a)(2)(B))

58.     Plaintiff repeats and realleges paragraphs 1 through 57 and incorporates the same as though set forth herein.

59.     Pursuant to 11 U.S.C. § 523(a)(2)(B), a debt in which a debtor obtains money by a statement in writing that is materially false respecting an insider's financial condition, on which

the creditor reasonably relied, and which the debtor caused to be published with intent to deceive is non-dischargeable.

60.    In the alternative to Count I, the Debtor and Delicious Gourmet did obtain money from Plaintiff by the following written materially false statements in the Agreement respecting Debtor's financial condition on which Plaintiff reasonably relied, among others, to the extent the Court determines Debtor's representations fall under definition of the Debtor's financial condition.

61.    In the Agreement, Debtor represented to Plaintiff that Debtor intended to use the proceeds of the Agreement for business purposes.  Specifically, the Debtor represented and promised to Plaintiff to use the proceeds exclusively for a "Business Purpose and no other. A Business Purpose as applied to use of proceeds obtained under this Loan Agreement, refers solely to the purchase and acquisition of specific products or services used for the following purposes only: working capital, business insurance (but not self-insurance programs), franchise fees, employee training, the purchase of equipment, inventory, business supplies and raw materials, the construction, renovation or improvement of facilities (but not the purchase of real estate). Business Purpose does not include payment for, or purchase of, any items, goods, materials or services for personal, individual or household use." *See* **Exhibit A**, Agreement, p. 16.  Plaintiff reasonably relied on these representations to extend the financing and execute the Agreement.

62.    To allow Plaintiff to collect its Repayment Amount, the Agreement required Debtor to use only the Account -- a single, specified depositing account to deposit all assets and receivables collected by Delicious Gourmet, which was designated by the parties in the Agreement and fully accessible to Plaintiff.  *See* **Exhibit A**, Agreement, pp. 8, 9 §§ 1.1, 2.6.  Plaintiff justifiably relied on these representations to extend the financing and execute the Agreement.

63.    The Agreement further states that:

The Repayment Amount shall be paid to LENDER by Borrower's using and irrevocably authorizing <u>only one</u> depositing bank account acceptable to LENDER (the "<u>Account</u>") to remit the <u>Payment</u> until such time as LENDER receives payment in full of the Repayment Amount plus any other amounts owed to LENDER under this Agreement. . . . Borrower understands that it is responsible for ensuring that the Payment to be debited by LENDER remains in the Account and will be held responsible for any fees incurred by LENDER resulting from a rejected ACH attempt or an event of default (<u>see</u>, Loan Summary).

**Exhibit A**, *Agreement*, pg. 6.

**II. REPRESENTATIONS, WARRANTIES AND COVENANTS.** Merchant represents, warrants and covenants that as of this date and during the term of the Agreement:

**2.6 <u>BORROWER DEPOSITING ACCOUNT AGREEMENT AND ARRANGEMENTS.</u>** Without LENDER's prior written consent, Borrower will not (i) change the Account through which Borrower's receivables are settled; (ii) set up multiple bank accounts into which any of the Borrower's receivables are deposited or otherwise transferred, (iii) block or stop payment on LENDER debits initiated under this Agreement, (iv) permit any event to occur that could cause diversion of any of Borrower's receivables to another Account; (v) take any other action that could have any adverse effect upon Borrower's obligations under this Agreement. Borrower will batch out receipts with all payment processors on a daily basis. Any of the foregoing changes, actions or inactions shall be a material breach of this Agreement.

**2.9 <u>OTHER FINANCING.</u>** Borrower shall *not* enter into any arrangement, agreement or commitment, whether in the form of a purchase (such as a merchant cash advance or factoring arrangement) of, a loan against, or the sale or purchase of credits against, any receipts, cash deposits or future card or mobile payment sales with any party other than LENDER without LENDER'S written permission.

****

*See* **Exhibit A**, Agreement.

64.    Plaintiff was to collect $807.00, per week from Delicious Gourmet via ACH debits. Plaintiff transferred the proceeds from the Agreement into this Account. Pursuant to the Agreement, Delicious Gourmet was to maintain the Account with sufficient funds to cover payments to Plaintiff. *Id.*, at p. 6. Plaintiff relied on these representations to extend the financing and execute the Agreement.

17

65.     The Debtor's conduct described above constitutes obtaining money by materially false written statement regarding an insider's financial condition, on which Plaintiff relied, and which the Debtor made with the intent to deceive.

66.     Consequently, the Debtor's debt to Plaintiff, is one for money obtained by materially false written statement regarding an insider's financial condition, on which Plaintiff relied, and which the Debtor made with intent to deceive, and is non-dischargeable.

67.     Accordingly, Debtor's debt to Plaintiff is non-dischargeable, and Plaintiff is entitled to an award of damages in the amount of at least $58,807.79, plus additional attorneys' fees, costs and interest at the statutory rate of 6% per annum from the date of the default that continue to accrue, and such other relief as the Court deems just and proper.

## <u>COUNT III</u>
### (Non-dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(4))

68.     Plaintiff repeats and realleges paragraphs 1 through 67 and incorporates the same as though set forth herein.

69.     Plaintiff believes and alleges that the Debtor entered into the Agreement and Guaranty with the specific intent to take Plaintiff's funding and obtain a loan from a third party.

70.     On or about August 16, 2018, Debtor received $29,815 from Plaintiff as required under the Agreement, in reliance on the Debtor's statements in the Agreement, and the pre-funding call.

71.     Debtor immediately defaulted on its obligations under the Agreement.  The Debtor transferred monies from the Account and stopped depositing Delicious Gourmet receivables (or any other amounts) into the Account and froze the Account, thereby defrauding Plaintiff.  Plaintiff only debited a total of $2,421 in ACH payments from the Account.

72.    Debtor obtained the funds from the Agreement by committing fraud and defalcation while acting in a fiduciary capacity as the owner, managing member, shareholder, officer, and/or director of Delicious Gourmet.

73.    Upon information and belief, Debtor used the funds and/or receivables without explanation, reason or purpose relating to Delicious Gourmet's business.

74.    Plaintiff sustained damages as a result of Debtor's fraud and defalcation while acting as a fiduciary.

75.    Debtor's obligation to Plaintiff is a debt for fraud or defalcation while acting in a fiduciary capacity and is nondischargeable.  Plaintiff is further entitled to an award of damages in the amount of at least $58,807.79 plus additional attorneys' fees, costs and interest at the statutory rate of 6% per annum from the date of the default that continue to accrue, and such other relief as the Court deems just and proper.

**COUNT IV**
**(Non-dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(6)**
**Willful and Malicious Injury by the Debtor)**

76.    Plaintiff repeats and realleges paragraphs 1 through 75 and incorporates the same as though set forth herein.

77.    Pursuant to Section 523(a)(6) of the Bankruptcy Code, a debt incurred by a debtor who engages in willful malicious conduct which results in damage shall be non-dischargeable.

78.    Plaintiff believes and alleges that the Debtor entered into the Agreement with the specific intent not to use the proceeds from the Agreement for business purposes and not to repay the amounts owed under the Agreement. In addition, the Debtor made false statements to Plaintiff with the intent to induce Plaintiff to extend funds.

79.     Debtor immediately defaulted on its payment obligations under the Agreement. Plaintiff only debited a total of $2,421 ACH payments from the Account.  The Debtor thereafter sent the funds obtained from Kapitus to a third-party, stopped depositing funds into the Account, preventing Plaintiff from receiving weekly payments from Debtor in the form of ACH payments from the Account as agreed to in the Agreement.

80.     Upon information and belief, the Debtor never had any intention to honor the Agreement.

81.     The Debtor also engaged in the following willful and malicious acts, among others:

a.       The Debtor willfully and maliciously executed the Agreement in which he represented that he intended to use the funds from Plaintiff for business purposes.

b.       The Debtor willfully and maliciously made material omissions of fact that induced Plaintiff into transferring the funds to Delicious Gourmet, such as failing to disclose that he did not intend to repay Plaintiff by weekly ACH payments but obtaining additional funding, which was specifically prohibited by the Agreement.

82.     The Debtor's activities described herein constitute willful and malicious conduct which resulted in damage to Plaintiff.

83.     Consequently, Debtor engaged in willful and malicious conduct which resulted in damage to Plaintiff and is non-dischargeable.

84.     Accordingly, Debtor's debt to Plaintiff is non-dischargeable, and Plaintiff is entitled to an award of damages in the amount of $58,807.79, plus additional attorneys' fees, costs and interest at the statutory rate of 6% per annum from the date of the default that continue to accrue, and such other relief as the Court deems just and proper.

**WHEREFORE**, Plaintiff prays for entry of judgment against the Debtor, as follows:

a.     for an order providing that the debt owed by Debtor is non-dischargeable in the instant Bankruptcy Case, in any other chapter under Title 11 to which this case may be converted, and in any future bankruptcy case filed by or against the Debtor;

b.     for an award of damages in the amount of $58,807.79, plus additional attorneys' fees, costs and interest at the statutory rate of 6% per annum from the date of the default that continue to accrue; and

c.     for such other and further relief as this Court may deem just and proper.

Dated this 18th day of October, 2021.

                              **KAPITUS SERVICING, INC., F/K/A COLONIAL FUNDING NETWORK, INC. AS SERVICING AGENT FOR FLASH ADVANCE/ DIRECT MERCHANTS FUNDING, LLC,**

 /s/ Paige Levy Smith                          /s/ Klementina V. Pavlova
Paige Levy Smith, MD Fed. Bar No. 19912        W. Ashley Burgess *(admitted pro hac vice)*
SANDS ANDERSON PC                              Klementina V. Pavlova *(admitted pro hac vice)*
1497 Chain Bridge Road, Suite 300              SANDS ANDERSON PC
McLean, VA 22101-5728                          P.O. Box 1998
Tel. 703.893.3600                              Richmond, VA 23218-1998
 *Counsel for Kapitus Servicing, Inc. f/k/a*   Tel. 804.648.1636
*Colonial Funding Network, Inc., as servicing*  *Counsel for Kapitus Servicing, Inc. f/k/a Colonial*
*agent for Strategic Funding Source, Inc., d/b/a*  *Funding Network, Inc., as servicing agent for*
*Kapitus*                                      *Strategic Funding Source, Inc., d/b/a Kapitus*